Number 20-11315, Jamie Faith Edmondson et al. v. Velvet Lifestyles, LLC et al. And Mr. Zipper, we'll start with you. May it please the court. My name is Joshua Zipper. I am counsel for the defendant appellants Joy Dorfman and my three Yorkies. Joy Dorfman was planning on coming but she's 71 years old and the trip down to Miami from Palm Beach County was a little much so she is not here. This is an appeal of an order granting summary judgment as to liability only against Dorfman and Yorkies. There are numerous problems with the order and the evidence on which the order is based. The order simply doesn't articulate a factual or legal analysis which would support any liability under any theory. And the question of the theory is open because the lower tribunal simply didn't articulate an actual theory of liability under which Dorfman or Yorkies were being found liable. I think you may have, for my part, I think you may have an argument with regard to Ms. Dorfman but I don't see the problem with Yorkies given the structure of the I just don't see an issue there. Certainly there's more, a lot more attenuation between Dorfman and the companies of and the activities of Velvet Lifestyles, the actual operator of the nightclub and the advertiser. But Yorkies... Well the thing is the thing is that there are different legal standards for Ms. Dorfman than there are for the corporate entities. The legal standard for the corporate entities is the same. The question is whether or not there's enough evidence to fit each entity within the legal standard. But you've got a different standard for individual liability for someone like Ms. Dorfman but you don't have the different standard for Yorkies. The only question with Yorkies is sufficiency of the evidence. Certainly there is, yes, for the personal liabilities has to be active, knowing participation, moving conscious force. But there is still a legal distinction between Velvet and Yorkies. So Yorkies is an LLC that is the sole member of Velvet. But I don't believe there's evidence in the record that Yorkies itself was the advertiser. But what did, who paid whom for what in the Yorkies Velvet structure? Who paid whom a fee? Right, so Velvet paid, would have distributed funds to Yorkies that it received as a management fee for operating the nightclub. Then Yorkies is operating the nightclub. And if you operate a nightclub as an entity, not as an individual, it seems to me you are doing the sorts of things that are necessary to keep the nightclub going in its normal activities. And one of those things is advertisement. Right, but I don't believe that as it's framed Yorkies is operating or managing the club. Yorkies is the managing entity of Velvet. But there were employees, there were contractors that were responsible for the promotional activities. I don't disagree that there is more, less attenuation. But as I read the false advertising statute, it applies to the advertiser, which is Velvet. I think there still needs to be a showing of, if it's not personal liability, either piercing the corporate veil theory or acting. Well, let's begin factually in this record. Who actually pays for the advertising? Where does the money come from? The money comes from membership dues paid by members of the club. And so that, which is a non-profit, that non-profit pays the management fee to Velvet Lifestyles. The non-profit that the members of the club were a part of was called Miami Lifestyles. Well, I thought that Velvet paid Yorkies a management fee. Do I have that right? Which way did the money go here? Velvet paid Yorkies, as I would characterize it, a distribution. Does Yorkies pay Velvet anything? No. So what, just to follow up on Judge Jordan's question, looking at the evidence, the summary judgment record, what does Yorkies do with relationship to Velvet? It doesn't hire the advertiser, right? Right. And it doesn't pay the advertiser. Right. What does it do? I would characterize it as a holding entity. And I don't know how or why the structure was set up. Well, does the accountant who was deposed give an answer to that question? I don't want to speculate. I don't know. It's addressed. And if memory serves, he had said, or Randy Dorfman, the corporate representative said, that's how the lawyers set it up. What I'm just trying to find out is what role, if any, Yorkies played in the operations of Velvet? What did Yorkies do as a corporate entity in relationship to Velvet? It didn't pay Velvet money. Tangibly. It received money from Velvet. Right. Tangibly, it didn't do anything. And then the money it received. There's no documentation showing that it did anything. There's no email showing that it did anything. Velvet threw, and the member is Yorkies. And so the argument would be Yorkies managed and caused Velvet to hire contractors. But what I'm just trying to do is go behind the words managed. What, in fact, in this record, does it show that Yorkies did? Is there any evidence other than that Yorkies was paid a sum of money by Velvet and then passed the money on to Dorfman? That's. Is that essentially what happens here? That's correct. Does Yorkies own the land upon which Velvet sits? No. That's a separate company that owns the land. Correct. Did own the land. And there were other tenants on the property, but that's a separate company. It looks like Yorkies was a vehicle by which Velvet paid Dorfman. So. But I'm just trying to find out what else can I fairly find in this record? The. Telling us about this relationship between two legally distinct corporations and an individual. But with regard to Yorkies. So for the for the for the moving party, for the plaintiffs, the record is, as you described, money was distributed. And there. Otherwise, there's and then there's the corporate structure, the hype, but otherwise there's no evidence in the record, as I recall, on either side as to what Yorkies actually did. Well, tell me about the corporate structure. Uh, so. Yorkies is the is the member of Velvet. And then Dorfman is. No, Yorkies is not the member of Velvet. Velvet. Velvet is the entity that is owned and managed by Yorkies, right? Correct. Right. OK. So to answer your question that they would be the manager for Velvet, technically with authority to cause Velvet to act. But there's no. And the person who would sign off on instructions or authorizations from Yorkies would be a member or somebody who had delegated authority to do that. Dorfman was the Joy Dorfman was the member of Yorkies. But again, there's no documentation that she signed authorizing Velvet to take any activity with respect to promotional activities for the nightclub or anything else. You're going to run out of time soon, so I would like you to address the issues that you think exist with regard to Miss Dorfman's individual liability. Right, so I think that the case law that is cited in the initial brief, the Chanel line of cases, makes clear that for personal liability, there has to be more than what I think is being proposed as a control theory. By virtue of her being a manager of the manager of the false advertiser, she's liable. But the standard requires a lot more. It requires a moving, active, knowing participation in the infringing conduct. And that simply doesn't exist either in the plaintiff's statement of undisputed facts in support of motion for summary judgment. But even if it did and the burden was flipped to Dorfman, there are numerous documents, summary judgment evidence, that refute or at least raise an issue of fact that Dorfman had no participation whatsoever, not only in the promotional activities for the nightclub, but in anything else with regard to the management of the club. And the ADT case, I think, provides a nice dichotomy where the president of the in the infringement, and so they found that there was personal liability. But a more attenuated individual, they said at least there were issues of fact. Here, not only are there no documents with Dorfman's name on it, other than a Sunbiz document, there's no deposition testimony. They didn't bother to depose Dorfman because they knew. And what sort of highlights their inability to put forth any evidence is in their moving papers, they don't espouse any, they don't articulate a legal theory on which they are entitled to summary judgment against Dorfman. They just list the few facts that she's a manager and that money flowed to her through distributions, neither of which comes anywhere close to raising a genuine issue, an absence of a genuine issue of fact as to active participation. Go back to Yorkies for one second, if I could. In your, not in Ms. Dorfman's motion for summary judgment, but in your response to their motion for summary judgment, did you try to differentiate between Velvet and Yorkies and tell the court that they were two different entities which had to be treated differently because they were independent and you had to respect the corporate structure and that the plaintiffs had to show liability for both of them and they couldn't treat them as one big glob? I regret not being counsel in responding to that. And so to answer your question, not in so many words. Whereas with Dorfman, that distinction is made clearly, but I don't recall and I'm going to go back and check and with the remaining time I have at the statement of facts to see. My feeling is the same as yours, having read the summary judgment record. Not the underlying facts of depositions and discovery and all that, but the papers. And it seems like everybody just applied the Lanham Act standard, but didn't try to sort of differentiate between defendants, except for Ms. Dorfman, but on the corporate side, sort of treated them in lump. Right. That's exactly what happened. That's what I think plaintiff's statement of facts reflects for the most part and certainly the order on appeal reflects. Let me, before you sit down, ask you just one or two additional questions and you're now on our time rather than your rebuttal. As I understand the record, and I want you to correct me if I have any of this wrong. In response to the plaintiff's motion for summary judgment, your client submitted a statement of material fact. Among the things that were offered and that the district court had in front of it was one, Dorfman's own declaration. I take it Dorfman was never deposed. Correct. Plaintiff did not depose Dorfman. That's correct. You had the declaration of Jason Silvera, right, and he was deposed. He was deposed. Third, you had the declaration of Marilyn Gonzalez, but she wasn't deposed or she was deposed. I believe she was, yes. And then you had the testimony of Randy Dorfman. Correct. As I understood it, Randy Dorfman testified about the role or relationship between the corporate defendants. Do I have it right that he testified under oath that Velvet was the management company for the club, not Yorkies? That's correct. So he disputes Yorkies as being a driving force for playing any role in the actual operations of Velvet. Right, and he would know these companies, the club has operated since 2001 before Yorkies was even formed. Which I think was around 2010-2011, but I might be off by years. Does he testify or does the accountant Mark Liebman testify specifically about the purpose surrounding the creation of the three Yorkies? As I recall, and I'm going to go back and look at Mr. Liebman's testimony, it was because the Dorfmans had recently been married and they were, I guess, restructuring their estate, and that is what lawyers advise them to do. I am going off memory, so I need to double check that. That's fine. Let me just ask you one final question, and you can just check it before you come back on rebuttal. So, am I correct that the district court never found or concluded that the evidence submitted, which we've just recounted, was a sham? That's correct. Your colleague has argued that all of that evidence should be discarded because it was a sham. Did the trial court, in addressing summary judgment, ever say in words of substance that this evidence should be discarded because it was a sham? No, that never happened. Thanks very much. Thank you. Okay, Mr. Zipper, you've got your full time available for rebuttal. Ms. Gardner. Good morning, Your Honors. May it please the court. Christine Gardner on behalf of the 32 appellees in this matter. First, we'd like to point out that appellants have raised no arguments in their briefs as to Velvet Lifestyles LLC, so there's no dispute that that entity is liable here. We'd ask the court to affirm as to Velvet. I'm curious about something there. Does Velvet still continue to exist, and does the club continue to operate? My understanding is that Velvet was dissolved on the eve of dispositive motions in this case, and that the club does continue to operate. But I would have to check the record. I guess really what I'm asking, and it may not be in the record, is whether there are any bucks out there. Sorry. Whether there's any money out there to secure the judgment. Whether there's anybody to pay the freight of $800,000 or $900,000. I would have to check with trial counsel as to that, but- It's not in the record. It's not in the record. Thank you. Ms. Gardner, let me tell you about the concern I have on your side of the case. And the concern goes to Ms. Dorfman. Parties don't have to move for summary judgment on everything. And it seems to me that the plaintiffs, I don't want to say yours, because I know you weren't the lawyer involved in the district court proceedings, but the plaintiff's summary judgment motion did not even try to articulate the standard for individual liability under the Lanham Act. And so if that's the case, how did the plaintiffs meet their burden for summary judgment as to her? It just seemed to be an assumption that everybody got lumped together and if there was liability for one, there was liability for all. And that may be true with regard to the corporate entities, but I have doubts about Ms. Dorfman. Yeah, understood. And, you know, that raises a good point that everyone was lumped together. All the defendants were lumped together in response to our motion, or our motion for summary judgment as well. But this is a counter argument to our motion and it wasn't raised. Nowhere in their response to our motion do they actually raise this argument. In their statement of undisputed facts, there are a couple of facts that might go towards this. But again, those facts aren't mentioned in response to our motion at all. But I guess I take that as correct, I think, given my reading. But my question nevertheless remains, did you and by you I mean the plaintiffs, the plaintiffs meet their burden of showing that they were entitled to judgment as a matter of law based on the record against Ms. Dorfman? In other words, if a party doesn't brief a certain count in a summary judgment motion, the other side has no obligation to respond to that count because you just didn't move for it. And so that's what I'm trying to figure out from this record. Yeah, I agree that we did not raise that in our motion for summary judgment. You're correct. But I'd also like to point out, which you recognized earlier, there's a threshold preservation issue here regarding where these arguments were raised. So, you know, our motion dealt with the complicated issue of whether there was a violation under the Lanham Act as to all defendants. And that could have been the individual liability could have been addressed in response, but it was not. Well, that's one of the things that the district court said in denying the motion for judgment as a matter of law later on after the trial. And it's not the district court's job then to look through the record and supply parties with legal arguments that maybe they could have raised, which is essentially what we're looking at here. I'm curious in the complaint that you were operating under when the summary judgment went before the district court, did the amended complaint ever raise this question of piercing the corporate veil? No, I don't believe it did. However, I'd note that this is a new argument raised here for the first time. I didn't see anywhere in the record below. So there's again- Right, but you're arguing that liability can be established, among other reasons, because the corporate veil should be pierced. Correct. That regardless of the corporate forms, all of them were a fiction. There was essentially an identity between Ms. Dorfman, the three Yorkies, and Velvet. And therefore, the record was sufficient to support the summary judgment order the trial court entered in your favor. That I understand to be the thrust of the argument. But I'm simply asking whether A, the amended complaint said anything about any of these issues. I read it and I didn't see anything on piercing the corporate veil, the identity of interest, Dorfman was the same thing as Velvet and the same thing as the three Yorkies. I didn't see anything of that. Was there any evidence? So as I looked at the record, when the summary judgment motion came up before the trial court, this issue of piercing the corporate veil, etc., was only responded to when you replied to, or when your predecessor counsel replied. So there was nothing to support the theory of the identity of interest piercing the corporate veil or anything like that. Have I missed that in the record? Is there something in the record that would support a finding of summary judgment on liability for the plaintiffs with regard to piercing the corporate veil, the identity of interest, or anything like that? Because I just didn't see anything to support that. Yeah, Judge Marcus, you're completely correct about the state of the record. But I'd also note there is evidence of commingling of funds in the record and evidence also that Velvet conceded through its corporate rep depo that it knew what was going on and that it was wrong. There was... I guess the question that I was asking and the question that Judge Jordan was asking did not go to the liability of Velvet. That's easy for the Lanham Act violations. The problem that I'm having, and I want you to help me with, is how do you get from here to here liability summary judgment regarding Joy Dorfman and the three Yorkies? Is there some evidence in the record that would establish that the individual Joy Dorfman and the corporate entity, the three Yorkies, actively caused the infringement or played some role as a moving force in the infringement? Can you cite me to any record evidence that would support that proposition? Because it seems to me if there's none, then you have a tough argument to sustain, certainly on Dorfman and maybe on the three Yorkies as well. Yeah. So we have a number of facts listed out in our brief and I'll list those again. And if you look at each fact individually, I agree maybe they aren't enough to establish liability, you know, but when you put them all together along with the record, there's really only one reasonable conclusion here is to the material facts. I can run through those for you with the record sites. We have the facts as to Joy being president and manager as to both Velvet and Yorkies, and Yorkies sole member, and then Yorkies role as the sole member of Velvet. Joy's receipt of the direct proceeds of the violating activity through more than $400,000 a year in a management fee. And that's in the accountant's testimony. And then Velvet actually conceding that it knew what was going on and that it was wrong. We had Randy's testimony that there was an initial violation that's unrelated to this case. He spoke with Ms. Neft and then after Ms. Neft left Velvet, there were additional violations and that's when our demand letter came along. So those are, again, those are the facts that we're traveling under here. We believe that these are sufficient under the case law and I understand that, you know, that there are some cases out there with additional facts. Perhaps that would be enough if that's all the record showed. But the problem that I'm having is beyond that on one side of the ledger, the defendants put in a good deal of evidence. Dorfman testifies or she was never called for a deposition for reasons that are not clear to me why you wouldn't call a principal to ask these questions. But her declaration says unambiguously that she never exercised any management control operation, had nothing to do with the day-going decision-making authority, never participated in any way in the club's promotional activities, never participated in advertising and marketing. Then you have Jason Silvera. He's the manager of the club. He worked there since 2001 and he unambiguously said he's the guy who did the management of the club and he never dealt with Dorfman at all. He swears under oath that she played no role in the management and he says the same thing in his sworn testimony and deposition. Marilyn Gonzalez, a third-party promoter for the club, says the same thing. And Randy Dorfman basically says the same thing. And there's not any evidence from Mark Liebman, the accountant, that she played any role at all in the operations, let alone had anything to do with the offending Lanham Act conduct. All of that was in the record. Why didn't that create at a bare minimum material fact and dispute that could not be resolved on summary judgment? The judge doesn't say one word about any of this testimony. But it was in the record and the judge says, when denying their motion for summary judgment because of the error of failing to file a material statement of fact, says, but don't worry, I can consider all that evidence anyway when it comes up on the plaintiff's motion for summary judgment. I guess what I'm asking is why aren't there material issues of fact and dispute that bar summary judgment here? If you believe Dorfman and Dorfman and Silvera and Gonzalez and Liebman, aren't there issues of fact and dispute on liability? I'm sorry? On the issue of liability. Well, I'd point out again that this did not come up in our motion. The court, again, didn't have to reach this issue when it came to our motion. There are some issues with Mr. Silvera and Ms. Gonzalez' testimony. They both previously stated that they had no personal knowledge about the advertising. We discussed that in arguing that these are sham attestations. And that's as to both Ms. Gonzalez and- But doesn't that really go to credibility or believability? You could undermine them substantially if they were called to testify at a trial. But on summary judgment, we're obliged to take the evidence in the light most favorable to the non-moving party and ask whether there are material issues of fact in dispute. So I think you're right that there's plenty to cross-examine them about. But can a trial judge make that determination on her own on summary judgment? Or is she not obliged to credit in the light most favorable what the Dorfman said and Silvera, et cetera? Well, I'd agree that there's- I agree as to the standard here and how those should be considered in general. But I believe it's the Bentley case. There's another case that's cited in the briefs that it also involves the same kind of completely contradictory testimony. Or I believe that was an affidavit or a declaration where you have a business- There, I believe it was a CEO stating one thing and then later on directly contradicting that in order to avoid liability here. When you look again at the whole body of what's before this court, I don't believe it's enough to create an issue of material fact. Yeah, I think you've got a strong point on that. But the procedural hurdle for me is that, as Judge Marcus noted earlier, the district court never made a ruling on your argument that the declarations or attestations or affidavits were a sham given the earlier testimony on the record, right? Because we review that for abuse of discretion, but there's never been a decision on that one way or another. Yeah, respectfully, the district court didn't have to reach that issue. I know, given the way it ruled, it didn't have to. But there's no ruling there on- There is no ruling, no. You're correct, there's no ruling. And again, just based on how that evidence was submitted to the court, there was no need to make a ruling. And I think you noted earlier that these defendants were all lumped together in the motion. When you're referring to defendants interchangeably, it's difficult for the court to supply them with these arguments, separating them out. And again, that gets back to my preservation point from earlier. I think it's really difficult to overcome that here. And assuming, again, that we get past that procedural issue, the only reasonable conclusion is that Yorkies and Ms. Dorfman are indeed liable. And the common factual theme in all the cases cited here is this idea of control and authority. And it's really implausible that the president and manager of both Yorkies and Velvet, Yorkies sole member, with Yorkies being the sole member of Velvet, with all this authority to control operations and this receipt of management fees, would not qualify under this test, especially where Velvet conceded that it knew it was going on, knew that it was wrong. You know, we're here today because we put on evidence that she had to have control over the and this shifted the burden to appellants and we submit it was sufficient to, had it been properly preserved, to merit summary judgment in our favor below. All right, if I may. Oh, of course, of course. Follow up. One thing you can help me with, hold Ms. Dorfman aside. And let's talk about Yorkies, the three Yorkies. It's, as I understand it, a separate corporate entity created under the laws of Florida, registered with the Secretary of State in Florida, right? Distinct from Velvet and distinct from Globus, which owned the land on which the club sat. Correct. Right. There's no question that under controlling law, a natural person and a corporation may be liable for trademark infringement under the Lanham Act if either the individual or the corporation named as party defendants actively caused the infringement as a moving conscious force. That's the language we used recently in controlling precedent as I see it in ADT. What evidence is there in the record that you can point me to with regard to three Yorkies that that corporate entity, holding aside Ms. Dorfman for a moment, that the three Yorkies did something that actively caused the infringement as a moving conscious force? Well, Yorkies is, again, a single purpose entity for the sole purpose of passing these to the accountant below that they don't know why Yorkies was formed. It was just something the lawyers did. The facts that we have are, one, Yorkies' corporate officer position within Velvet, and two, its receipt of funds. And those are the two facts we have. And then, again, Joy Dorfman's sole position authority within Yorkies. Would it be fair to say that Yorkies' liability in substantial measure is driven by Joy Dorfman's liability? And that if the record is insufficient as to Joy Dorfman, it's hard to bring in this corporate entity as an active moving conscious force in the trademark infringement? Well, we'd submit that that standard would. Joy is an individual, and Yorkies is not. And Chanel and the case law specifically say an individual person. You know, these are two different types of... Right. No, I have no doubt that an individual can be liable. Right. And I have no doubt that a corporation can be liable. We've talked about Dorfman. I'm just to... Once we get beyond waiver or forfeiture of the issue, what there would be in this record that would support finding that the three Yorkies is a separate corporate entity, which was obviously created for the purpose of moving the money from the club to Joy Dorfman. That's why it was there. Other than that, it did nothing. It played no role. She was essentially the company. She was it. And the money moved just one way, from Velvet to the three Yorkies on to Dorfman. But I guess what I'm asking, is there any evidence to show that the three Yorkies did something independent of the individual who was a principal here, Ms. Dorfman? There's nothing in the record as to that. There's the facts I recited earlier. We have generally the corporate structure and the understanding as to Joy's control up and down the chain. Thank you very much. Thank you. All right. Thank you very much, Ms. Gardner. Thank you. The question becomes one of, you know, the chicken or the egg. So it looks to me like they lumped everybody together in their motion for summary judgment, but that you, and by you I mean the lawyers representing your client in the district court, didn't try to tell the district judge, listen, they've lumped them all together, but you can't do that. You've got to treat every entity, every individual differently. And here's the evidence for Velvet. Here's the evidence for Yorkies. Here's the evidence for Dorfman. And at least as to Yorkies and Dorfman, it fails. So on who do we put the onus then? On them for not differentiating in their motion for summary judgment or on your side for not bringing those distinctions to the district court's attention in your response? Certainly the burden is on the plaintiff in moving for summary judgment. They have to establish the absence of a genuine issue of material fact as to whatever theory of liability they're seeking to be imposed. And so it has to come from the plaintiff. The defendant can't respond to an argument that has not been raised. However, that response is, if not directly, indirectly made in the form of the statement of facts and opposition. I don't believe the burden is on the plaintiff to articulate their theory of liability, and they simply didn't do it. They have to put on evidence that there was an active participant. Understood, and I think you're generally right about that from my perspective. But the evidence that Judge Marcus described regarding, for example, Ms. Dorfman's alleged lack of involvement, was that evidence laid out in your response to the motion for undisputed material facts? Without doubt. I have the statement of facts here. I can point you to the paper. Can I just stop at that point to be clear? It was in the statement of facts. Did the record before the district court on summary judgment include the declarations and testimony of Dorfman, Silvera, Gonzalez, the second Dorfman, and Liebman? Yes, they had all of them. That record was in part of the summary judgment record presented to the trial judge? Yeah, yes, it was. And the court didn't rule that any of it was a sham. And the Dorfman declaration specifically is almost proving a negative, which is why it's drafted the way it is. Because if there's no involvement, all you can say is there's no involvement. But again, I think that point is moot, and not before Your Honors today, because there was no ruling by the lower tribunal that any of that summary judgment evidence was a sham or should be disregarded or not considered. And clearly it raises a genuine issue of material fact. As to Dorfman, as to Yorkies, I went back and looked at the Liebman transcript, and they are, he testifies that they are the manager of Velvet, which is the manager of the club, that Velvet was not a passive manager, meaning Velvet did stuff, Velvet had employees. But certainly there is, I have to concede, there is less distance between Velvet and Yorkies than certainly there is between Dorfman and Velvet. Just to answer a couple of questions, the club, as I understand it, is still in operation, but not by any of these parties or appellants, and has been that way for a number of years. So it's operating under the name Velvet or Madonna Club or whatever, but the ownership is different. That's correct. So it was sold. Correct. By this, is that in this record? You know, I don't know if it was sold. I know that the building was sold. I don't know if the management company was sold, because the management company doesn't exactly have any assets. They, I guess, had the lease with the owner of the building. None of that is in this record, however. Okay, Mr. Zipper, thank you very much. Ms. Gardner, thank you both very much. Thank you for your time, Your Honors. Thank you, Ms. Gardner.